Edwards, Ch. T.†
now delivered the following opi-mon of the court i — 1 he only question necessary to be decided, is, was M’Clanahan’s bill of review properly sustained by the court below, on account of M’Clanahan having discovered testimony, which was unknown to him when the former decree was pronounced ?
It appears that before this bill of review was filed, by leave of the court, M’Clanahan had prefered another bill of review, nearly the same in substance with the one *343 under consideration ; and that upon application for leave to file it, the court refused to grant leave ; to which opinion, M’Clanahan filed a bill of exceptions. M’Cla-nahan then sued out a writ of error : and on the decision of the writ of error, the court of appeals reversed the judgment, entered on a report of commissioners, at the same term ; directed the court below to give judgment on a former report ; and remanded the cause for further proceedings ; but did not reverse the decision overruling the motion for leave to file the bill of review, or direct it to be received. After those proceedings, the present bill of review was prefered and sustained.
The difcove-n'w wlt* "emltter°which was ⅛ iffue in thetormercaufe, ⅛"°1>⅛80⅛-view,
the cafe
A bill of review cannot be permitted, after a demurrer has been allowed, to a former bill of review — 1 Vern. 441, 135. In this instance, the bill had been rejected by the court, when it was first offered, andnoton demurrer ; but as a decision of the case had been made, to which an exception was taken, it would seem that the rejection, not having been reversed by the court of appeals, ought to be considered as equivalent to its having been rejected on demurrer ; although no error was assigned, upon that point, in the writ of error.
If a writ of error had never been prosecuted, the court below, after rejecting one bill of review offered, to which an exception was taken, ought not to have yielded to another application, so long as their first judgment remained unreversed, by an appellate court. It involves the absurdity of two contrary judgments on the record, upon the same case. Besides, if such a proceeding were tolerated, there would be no end to applications ; and the party might, from time to time, mend his hold, as occasion should require. The inconvenience and mischief of such a procedure, must be discovered by every reflecting mind.
The former decree alluded to, was founded on an award, made by arbitrators, before a bill and answer had been filed. But it appears from the submission on record, the exhibits in the cause, and the bill of review, that the principal thing to be ascertained by the arbitrators, and the very point in issue before them, W'as, the situation of the head of the west fork of Cooper’s run, which was called for in the entry made for John Melton, in the year 1782. To enable them to do this, a sonnected plat, and a considerable number of deposi- *344 tisas, were produced by the parties ; and, for ány thiriji that appears, viva voee testimony might also have beed given. The connected plat exhibited the length, course; Mul relative situation of the respective forks of Cooper’s run ; and the depositions, with some contrariety; declared by what names those forks were ealled and known; before, at, and after the date of the entry. From these exhibits and proofs, the arbitrators made their award.
M’Glanahan states, on oath; in this bill of review; that before the arbitrators hé Contended, that One branch of Cooper’s run, was; from hature; the west fork ; and that the defendants contended that another branch of Cooper’s run- was the west fork, and that it was so known and reputed when the entry was mádé ; that hé beleives the arbitrators; from the reputed character of the stream, determined the latter to be the weSt fork. He states that he has discovered other witnesses who will establish, beyond all doubt, that the branch for which he contended,'was, before; at the time, and since making Said entry,' called, known, and reputed to be the west fork of Cooper’s run. He names the witnesses ; refers to the depositions of some of them, which shortly before had been taken, to establish thatfdct in another suit; and he states, that until after the awárd was confirmed, he did not know what those witnesses could prove; or that they could prove any thing relative to the controversy.
But he does not swear he did not know that the branch contended for by him, was, at, before, arid since the daté of the entry, called, known, and reputed to be the west fork of Cooper’s run ; nor does he swear he did not, of could not, at that time, prove by other witnesses, dr that he did not contend before the arbitrators, that it was sd called, known and reputed ; nor does he swear that the witnesses since discovered by him were the only persons acquainted with Cooper’s run; or that he had'not; or could not; have discovered any others who were acquainted with its several branches. From his own' showing; then, it does- not appear he has since discovered any new matter, not at that time known to him; and which he therefore did not, and could not prove ; but only, that he has discovered new witnesses, who will prove a matter which he either may have proved, or could have proved, by other witnesses; This can surely furnish net ground, for a bill of review i
See Cunning. hem vs-antt
f, It is manifest that the arbitrators were called by M’-Clanahan to determine (to say ho mote) which was the west fork of Cooper’s run, from its natural or relative situation ; atidthat they were ealled, by the other party, to determine which was the west fork, by name and re-putationand that M’Clanahan, from the depositions taken, had timely notice thereof. And as the bill does not allege that any attempt was made to prove, that it the date of the entry, the several branches of Cooper’s run, had not acquired appropriate names, the great point in issue between the parties must have been, which of those branches Was galled and known by the name of the west fork of Cooper’s ruh. At least, this issue, by ne-, Cessary implication, was fairly tendered by the other party. If the branch contended for by M’Clanahan, was generally known by that fame, (from the nature of the thing to be proved, it must be presumed) he could have proved it by using due diligence.
If, then, M’Clanahan carelessly, or wilfully, neglected to join in the issue, by producing counter testimony to the point, it was more his fault, than his misfortune, that it was found against him ⅜ ánd bn no principle; legal or ’equitable, can he be entitled to relief.
In a suit at law; á court of chancery will never interfere after ¡judgment has been rendered; unless for somte Very substantial cauáe, which did not proceed from the fault óf the party aggrieved ; such aS that the witness on whose evidence the verdict was rendered; had been Convicted of perjury therein ; orón the production óf á rec'ord, deed; or other writing; which had not come to the knowledge of the party, uhtil after the trial. But this court can find ho case where a hew trial átláw, has been decreed On the discovery of new witnesses ; or, ih the language of a celebrated chancellor, (Pre.Ch. 194) (a) when it consists ih swearing only.’’ The reasons are obvious; namely; to restrain litigation; avoid perjury, and give stability to the tenure of property;
We know that in the country after whieh our juris* prudence ⅛ patterned, chancellors were created to aid the judges at laW; when their jurisdiction was found too limited ; and to restrain their judgments; after they ceased to have the power of doing so themselves : and- equi* tv required it to be done. Henee it is, that courts of chancery, both in that country and in this, have exer *346 ciSed the power of setting aside judgments at law, and directing new trials, in cases of the kind which have been suggested.
And we may with propriety Conclude, that they have embraced similar rules, with regard to receiving bills of review ; the cases being nearly, if not exactly similar. Accordingly, we find, that in the time of lord chancellor Bacon, the following ordinance was established :
“ After a decree has been enrolled, and is no longer open to the ordinary revision of the court, a bill of review may be filed, founded upon error of law, apparent on the record, without further examination of matters of fact ; or upon new matter, which may have arisen after the decree ; but not any new matter or proof, which might have been used when the decree was made; or upon new matter or proof, which came to light after the decree was made, and could not possibly have been used, when the decree passed ; but in the two last cases, the special leave of the court must be obtained.”
It is now only necessary to explain the second and third clauses of this ordinance. This is correctly and clearly done in Hinde’s practice (a) — “ No witnesses which were, or might have been examind, to any thing in issue in the original cause, shall be examined to any matter on the bill of review, unless it be to some matter happening subsequent, which was not before in issue, or upon matter of record or writing not known before. Where a matter of fact was particularly in issue before the former hearing, though you have new proof of that matter, upon .that you shall never have a bill of review ; but where a mere fact is alleged, that was not (alleged) at the former hearing, there it may be ground for a bill of review.”
We will add, that there is an important difference between the discovery of a matter or fact itself, which, though it existed at the former hearing, jyas not then known by the party to exist; or which was not alleged or put in issue by either party; and the discovery of new witnesses or proof of a matter or fact, which was then known or in issue. In the former case, the party not knowing the fact, and it not being particularly in issue, there was nothing to put him on the search, either of the fact, or the evidence of the fact; and therefore the presumption is in his favor, that as the matter made for *347 him, his failure to shew the matter was not owing to his negligence or fault,
But where the matter was known, or put in issue, the party is put Upon the investigation; and the presumption is strong, that by using due diligence, he might have shewn the truth of the matter on the former hearing.
And here an observation occurs, similar to that with regard to decreeing new trials at law. This court, after the most careful search, cannot fjnd one ease reported, in which a bill of reyiew has been allowed, on the discovery of new witnesses to prove a fact which had before been in issue ; although there are many, where bills of review have been sustained on the discovery of records, and other writings relating to the title, which was gener rally put in issue. The distinction is very material. Written evidence capnot be easily corrupted; and if it had been discovered before the former hearing, the presumption is strong, that it would have been produced, to prevent further litigation and expence, New witnesses, it is granted, may also really be discovered, without subornation ; but they may easily be procured by it; and the danger of admitting them, fenders it highly impolitic,
Let us * contemplate the consequences of sustaining bills of review, in cases circumstanced as this is. No limitation, as to time, bps been thought of, in which bills of review may be brought, less than twenty years after the decree has been pronounced; and perhaps some cases may occur, where they ought to be received after that period has elapsed. If, then, whenever a new witness or witnesses, can honestly, or by subornation, be found, whose testimony may probably change a decree in chancery, or; an award, a bill of review is received, when will there be an end to litigation ? And, particur larly, will it not render our contest for land almost literally endless ? What stability or certainty can there be in the tenure of property ? The dangers and mischief to society, are too great, and too numerous to be endured.
Therefore, the court below certainly erred in sustaining the bill of review in question, and in overruling the demurrer thereto; and, consequently, in the decree it bps pronounced in the case.
Decree reversed.

 Abfent, Jedge Bjbb,

(⅛) A*d Ed. of chancery,

(a) Page 59. SeealfaiFreem. W